IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRELL H. FRALICK                  :
                                    :
    v.                              : Civil Action No. DKC 2006-0441
                                    :
JOHN HASENBERG, et al.              :
                                    :

**MEMORANDUM OPINION**

    This case is before the court on appeal from the orders of Bankruptcy Judge Paul Mannes in Adversary No. 05-1237-PM which (1) denied the motion of Debtor Darrell Fralick for a continuance of the trial date, (2) denied Debtor's motion for a new trial, and (3) determined that a portion of a judgment against him in the Superior Court of the District of Columbia was not dischargeable pursuant to 11 U.S.C. § 523(a)(2). Oral argument is deemed unnecessary because the facts and legal arguments are presented adequately in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Bankr. Rule 8012. For the reasons that follow, the court will affirm the bankruptcy court's orders.

**I. Background**

    The following facts are undisputed. John and Kimberly Hasenberg ("the Hasenbergs") obtained a judgment against Debtor in the Superior Court of the District of Columbia on August 6, 2004, for violation of 16 DCMR § 800.1 (licensing of home improvement

contractors) and violation of Consumer Protection Procedures Act ("CPPA"), D.C.Code § 28-3901 *et seq.*[1]  The Hasenbergs won a judgment in their favor ("D.C. judgment") that consisted of a $25,000 refund of the home improvement contract price paid by the Hasenbergs to Debtor, a trebling of this damage claim, and attorney fees as allowed under the CPPA.[2]

On December 6, 2004, Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code  On March 4, 2005, the Hasenbergs filed an adversary proceeding against Debtor in order to determine the dischargeability of the D.C. judgment.  On June 17, 2005, the bankruptcy court entered a scheduling order and set the adversary proceeding for trial on November 29, 2005.

Debtor originally was represented by Robert Joel Zakroff.  Mr. Zakroff was disbarred and was no longer able to practice in the bankruptcy court.[3]  On July 1, 2005, and July 15, 2005, the bankruptcy court issued a "Notice to Debtor(s) Whose Attorney has been Disbarred from the Practice of Law from this Court."  On

---

[1] The basis of the lawsuit was that Debtor explicitly and implicitly told the Hasenbergs that the renovations to their home would be performed pursuant to applicable building codes and would be of a certain quality and workmanship, and that the work he did failed to meet those standards.  The suit also was based on the Debtor's misrepresentation as a licensed home improvement contractor.

[2] The total amount of the judgment obtained in the Superior Court case was $90,809.99.

[3] The record does not show when Mr. Zakaroff was disbarred.

2

October 6, 2005, the bankruptcy court again issued this notice. The notice states that the recipient "is notified that unless new counsel enters an appearance on your behalf within fourteen (14) days from the date of this Notice, all proceedings before this Court in which you are a party shall be treated as being conducted by you on your own behalf, without counsel, until and unless the appearance of new counsel is entered." (Paper 1, exs. 27-30).

Meanwhile, the Hasenbergs had their own questions as to whether their counsel, Alan S. Kerxton, would continue to represent them. On November 23, 2005, Mr. Kerxton filed a motion for leave to withdraw as counsel, explaining that the Hasenbergs decided to proceed without counsel for economic reasons and that they consented to this motion. On November 28, 2005, one day before the trial date and prior to Mr. Kerxton's appearance being stricken, Mr. Kerxton filed a motion for continuance of trial date. Mr. Kerxton stated that the Hasenbergs decided that it would be "unwise to represent themselves" and that they requested a continuance in order to make arrangements to retain new counsel and give new counsel adequate time to prepare. Later that day, Mr. Kerxton filed an amended motion in which he stated that "[p]rior counsel for the Debtor has advised counsel for the Plaintiffs that (i) the Debtor is out of town doing emergency repair work in New Orleans and will not be available for trial on November 29, 2005, and (ii) that he is in the process of retaining substitute counsel (Jeffrey

Orenstein) to represent him and such counsel joins in the Motion to Continue the Trial Date." (Paper 1, ex. 10).

The bankruptcy court denied the motion before the start of trial on November 29, 2005, because the motion was untimely:

> As you can see, we have an empty courtroom. This entire day was set aside to try this case. . . We set this on June 17. It was a scheduling order. As much as I would like to accommodate everybody, I think that with as busy as we are, we need to conserve the time that we have.

(Paper 1, Tr. 4). Subsequently, the Hasenbergs decided not to represent themselves, and so the trial proceeded with Mr. Kerxton representing them. Debtor did not appear and no one appeared on behalf of Debtor to support the continuance motion or to represent him at the trial.

During the trial, John Hasenberg gave the following testimony. He stated that when he hired Debtor to do work on his home, Debtor told the Hasenbergs that he had a license to do the home improvement work:

> Q. In the course of your meetings did the discussion about having a contractor's license come up?
>
> A. Yes.
>
> Q. Would you describe how that came up?
>
> A. We were going through the scope of the work and I remember we were standing in the kitchen and I asked him, "Do you have all the proper licenses to do this work?" and he said yes. I accepted that.

4

> Q. Was that important to you?
>
> A. Yes, very important.
>
> Q. Why?
>
> A. I just wouldn't trust someone who wasn't licensed to do this kind of work.
>
> Q. Do you have licenses in your field?
>
> A. Absolutely. As a financial consultant I have to have licenses to do any work with my clients. I have a Series 7 license, a Series 66 license, and insurance license. Any time I want to sell products or counsel my clients, I have to be licensed to do that.

(Paper 1, Tr. 9:7-10:2). Mr. Hasenberg stated that the Hasenbergs discovered Debtor did not have a license after they filed a lawsuit against him in the Superior Court of the District of Columbia. During a deposition that Mr. Hasenberg attended, Debtor stated that he had a home improvement license in Maryland but it expired in 1992. *Id.* at 10-11.

After Mr. Hasenberg's testimony, Judge Mannes found that Mr. Hasenberg had:

> certainly made a prima facie case as to the fraud and that he was defrauded by Mr. Fralick. The issue that I have though is under Section 523(a)(2)(A), what I would declare nondischargeable would be - - "A discharge under Section 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal or a refinancing of credit to the extent" - - and I find as a fact that all this was obtained by false pretenses or false representation or actual fraud.

5

(Paper 1, Tr. 17:15-17:23). The bankruptcy court tentatively fixed damages at $39,817.40.

In a Memorandum of Decision signed January 17, 2006, the bankruptcy court stated that it

> found as a fact that the Debtor had knowingly and deliberately misstated his status as a licensed home improvement contractor and otherwise defrauded the Plaintiffs. The court found that the Plaintiffs would never have entered into a [re]modeling contracting with him had they been advised of his true status as an unlicenced contractor. The court likewise found that Plaintiffs incurred damage that was attributable to Debtor's fraudulent conduct. Based upon these factual findings, at the conclusion of the trial, the court found that Plaintiffs had met their burden under § 523(a)(2)(A).

(Paper 1, ex. 22, at 1-2). The bankruptcy court also amended its earlier findings to add $15,809.99 in attorneys' fees.

On December 9, 2005, Debtor filed a pro se motion seeking a new trial. He attached to the motion an affidavit in which he stated:

> I was unable to attend the trial in the above captioned matter because I was working for FEMA as a result of the devastation caused by the series of Hurricanes that hit the United States. Through my previous attorney, Robert Zakoff, The Plaintiff's attorney moved for a continuance which I understand was denied. I have contacted Jeffrey Orenstein who has agreed to represent me. However, I was unable to get the money to him before the trial. The retainer is sitting in my previous attorney's account ready to be paid over to Mr. Orenstein.

6

(Paper 1, ex. 17). He stated as grounds for a new trial that he "was acting to protect the mental and physical well being of citizens of the United States." *Id.*

## II. Standard of Review

On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *See In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992); *Travelers Ins. Co. v. Bryson Prop., XVIII* (*In re Bryson Prop., XVIII*), 961 F.2d 496, 499 (4th Cir. 1992), *cert. denied sub nom.*, *Bryson Prop., XVIII v. Travelers Ins. Co.*, 506 U.S. 866 (1992). The parties agree that an abuse of discretion standard applies to requested continuances and to requests for a new trial. *See In re La Sierra Financial Servs., Inc.*, 290 B.R. 718, 726 (9th Cir. 2002)(continuances); *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)(continuances); *In re R.D.F. Devs., Inc.*, 239 B.R. 336, 338 (6th Cir. 1999)(continuances); *In re Lynch*, 430 F.3d 600, 603 (2nd Cir. 2005)(requests for a new trial); *In re Hixon*, 295 B.R. 866, 870 (8th Cir. 2003)(requests for a new trial).

## III. Analysis

Debtor presents the following issues on appeal:

> 1. Whether, under the unusual facts of this case, the Bankruptcy Court abused its discretion in denying the Motion to Continue the Trial Date.

7

> 2. Whether, under the unusual facts of this case, the Bankruptcy Court abused its discretion in denying the Motion for a New Trial.
>
> 3. Whether, the Bankruptcy Court erred, as a matter of law, in determining that the debt owed to the Plaintiff Appellee was not dischargeable.

**A. Order Denying Motion to Continue**

Debtor contends that he had compelling reasons that supported his motion for continuance of the trial: (1) Debtor was serving his country "[a]t the time of one of the worst natural disasters in the history of this Country;" (2) Debtor's counsel was disbarred and (3) Debtor believed that by Plaintiffs' filing their amended motion to continue, the case would be continued. (Paper 9, at 5).

The bankruptcy court denied the motion for a continuance, which was filed one day before the trial, because the motion was untimely. The court did not abuse its discretion. *See also United States v. Cassidy*, 48 Fed.Appx. 428, 434 (4th Cir. 2002)(finding no abuse of discretion where the request for a continuance, made less than fourteen days before trial, was denied as untimely); *United States v. Frazier*, No. 97-50001998, WL 852962 at *2 (4th Cir. 1998)(affirming the district court's denial of a continuance filed one day before the sentencing hearing). Debtor cites service of his country as a compelling reason but he fails to explain why he was unable to file a motion to continue in a timely manner in light of the fact that the trial date was set on June 17, 2005. Debtor

8

also does not state when he began doing the reconstruction work and specifically why the work prevented him from returning to this area for the trial. With respect to his argument that his attorney was disbarred, the record shows that Debtor was notified as early as July 2005 that his attorney was disbarred, and Debtor does not claim that he did not receive these notices. Thus, Plaintiff had more than four months to obtain new counsel. From the record, it appears that Debtor was in the process of arranging for new counsel, however, neither Debtor nor the attorney who planned to represent him filed a motion for a continuance to allow them to finalize these arrangements. *See Sampley v. Attorney General of N.C.*, 786 F.2d 610, 615 (4th Cir. 1986)(affirming the denial of a continuance in part because the defendant knew the case was called for trial in two weeks, the defendant had employed new counsel, and neither defendant nor the new counsel make a motion for continuance until the case was called). Debtor's third argument is unpersuasive because there is no reason for Debtor to believe that filing a motion means that the motion will, in fact, be granted.

Debtor cites to *Latham v. Crofters*, 492 F.2d 913 (4th Cir. 1974), in which the United States Court of Appeals for the Fourth Circuit found that a district court's denial of a motion to continue on the day the trial was scheduled to start was an abuse of discretion. In *Latham*, the defendant was unable to attend due to a very serious heart attack; his motion to continue was

9

supported by a letter from the Defendant's doctor.  The Court of Appeals found that the district court abused its discretion because, "[l]ooking at the record as a whole, we think that there was a sufficient showing of substantial danger to [the defendant's] life or health to mandate the grant of a continuance."  *Id.* at 915. Debtor contends that the Court of Appeals found an abuse of discretion because the defendant's "testimony was critical to his defense and the defense of other parties," and therefore, the defendant was unduly prejudiced by having the trial proceed without him.  (Paper 9, at 5).  Debtor misstates the court's holding.  The Court of Appeals repeatedly cited the defendant's health as its reason for finding an abuse of discretion.

Accordingly, the bankruptcy court did not abuse its discretion by denying Debtor's motion for a continuance.

**B. Denial of Debtor's Motion for a New Trial**

Debtor next argues that, under the facts of this case, the bankruptcy court should have granted his motion for a new trial. Bankruptcy Rule 9023 states that "Rule 59 FR Civ P applies in cases under the Code, except as provided in Rule 3008."[4]  A new trial may be granted under the following circumstances: (1) intervening changes in the law; (2) new evidence not available at trial; and (3) to correct a clear error of law or prevent a miscarriage of

---

[4] Rule 3008, which deals with allowing or disallowing a claim against an estate, is inapplicable.

10

justice. *See EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 112 (4th Cir. 1997). Debtor does not allege a change in the law or new evidence. Although Debtor does not say so explicitly, it appears that he seeks a new trial to prevent a miscarriage of justice. In the affidavit in support of his motion, Debtor stated that he had contacted Mr. Orenstein but he was unable to get the money to Mr. Orenstein before the trial. Again, Debtor offers no explanation as to why he had not made arrangements sooner, in light of the fact that he was notified of his attorney's disbarment more than four months before the scheduled trial date. Accordingly, Debtor has failed to show there was a miscarriage of justice, and the bankruptcy court did not abuse its discretion by denying Debtor's motion for a new trial.

**C. Dischargeability of the Debt Owed to the Hasenbergs**

Debtor argues that the bankruptcy court erred as a matter of law in determining that a portion of the debt owed by Debtor to the Hasenbergs was not dischargeable. In his argument, however, he objects to the court's ruling on the ground that there was "no evidence" to support the bankruptcy court's ruling. Thus, Debtor has presented a question of fact, not law. *See In re Giovanni*, 324 B.R. 586, 593 (E.D.Va. 2005)(stating that a bankruptcy court's finding of justifiable reliance is a finding of fact subject to review under a clearly erroneous standard).

The bankruptcy court found that the debt was not dischargeable pursuant to 11 U.S.C. § 523(a)(2), which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

To sustain an objection to the dischargeability of a debt under § 523(a)(2), the parties must prove the following elements:

> (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation.

*In re Biondo*, 180 F.3d 126, 134 (4th Cir. 1999).

The parties cite to *Werth v. Tashoff*, 1986 U.S.Dist. LEXIS 16745 (D.Md. 1986), an older, unpublished district court case, for a different catalogue of elements. The *Werth* court stated that the objecting party must prove:

> (1) that the debtor made materially false representations;
>
> (2) that the debtor knew the representations were false at the time he made them;
>
> (3) that the debtor made false representations with the intention and purpose of deceiving the creditor;

12

>    (4) that the creditor reasonably relied upon the debtor's materially false representations; and
>
>    (5) that the creditor sustained loss and damages as a proximate result of the materially false representations by the debtor.

*Id*. at *17-18 (citing *In Re Hunt*, 30 B.R. 425, 435 (M.D.Tenn. 1983)). The fourth element in *Werth* requires "reasonable" reliance. The proper standard, however, is "justifiable" reliance. *See Field v. Mans*, 516 U.S. 59, 74-75 (1995)(stating that "§ 523(a)(2)(A) requires justifiable, but not reasonable reliance"). The Fourth Circuit explained the difference between justifiable and reasonable reliance in an unpublished decision:

> This standard of [justifiable] reliance requires more than actual reliance but less than reasonable reliance. *In re Justice*, No. 01-02156, 2002 Bankr.LEXIS 1540, n. 3 (Bankr.N.D.Ohio Dec. 27, 2002). "It is a more subjective standard . . . that takes into account the interactions between and experiences of the two parties involved." *Id*. (quoting Jeffrey R. Priebe, Fields v. Mans and In re Keim: *Excepting Debts From Bankruptcy Discharge and The Difference Between Experienced Horsemen and Reasonable Men*, 54 Ark. L.Rev. 99, 109-110 (2001)).

*In re White,* 128 Fed.Appx. 994, 999 (4th Cir. 2005)(unpublished).

Debtor argues that there is no evidence that the Hasenbergs relied on Debtor's "alleged representation that he was licensed" and there was no evidence that this reliance was reasonable.[5]

---

[5] Debtor also states in a footnote that he was prepared to
(continued...)

13

(Paper 9, at 7). Debtor points to Mr. Hasenberg's testimony that he hired Debtor because Debtor was referred to him by a relative. Debtor also argues that the transcript is devoid of a request to see Debtor's license, an attempt to contact any licensing agent to determine whether a license was held, "or any other action that would be reasonable in determining whether the Debtor held a license." *Id.* at 7.

Debtor's arguments are without merit. The uncontroverted record shows that the Hasenbergs were told by Debtor that he had a license and that they relied on his assurance that he had the proper licenses when they hired him to do the work. The fact that the Hasenbergs were referred to Debtor is of no moment. There is no evidence that the Hasenbergs relied on the referral – to the exclusion of the purported existence of a license – in deciding to hire Debtor. Moreover, to satisfy the standard of justifiable reliance, the Hasenbergs need not show that they requested to see Debtor's license, made an attempt to contact a licensing agent to determine whether he held a license or took other actions to determine whether in fact Debtor had a license. *See In re Biondo*, 180 F.3d at 135 (stating that justifiable reliance is a "minimal

---

[5](...continued)
testify that he told the Hasenbergs that he was not licensed and that the lack of a license was not an issue for them, but because he was not able to be present at trial, Debtor had no opportunity to present that evidence to the trier of fact. This court cannot consider this evidence because it was not presented to the bankruptcy court, and therefore, is not part of the record.

standard" and holding that the creditors were not required to inspect the debtor's financial statements and were justified in relying on the debtor's representations). Accordingly, the bankruptcy court's findings that the Hasenbergs relied on Debtor's representation that he was licensed and that their reliance was justifiable were not clearly erroneous. In addition, the bankruptcy court did not err when it found that the requirements of § 523(a)(2) were met.

**IV. Conclusion**

Based on the foregoing reasons, the bankruptcy court did not abuse its discretion by denying Debtor's motion for a continuance; did not abuse its discretion by denying Debtor's motion for a new trial; and did not err when it found that the requirements of § 523(a)(2) were met. The court will affirm the bankruptcy court's orders. A separate Order will follow.

```
         /s/
DEBORAH K. CHASANOW
United States District Judge
```